## A08A2334. FISHER v. THE STATE.

(672 SE2d 476)

MILLER, Chief Judge.

On or about September 4, 2003, a Burke County grand jury jointly indicted William Fisher and David Council, Jr., on one count of armed robbery (OCGA § 16-8-41) and one count of possession of a firearm during the commission of a crime (OCGA § 16-11-106). The case proceeded to trial against Fisher, and on October 20, 2004, the jury found Fisher guilty on both counts. Fisher appeals the denial of his motion for a new trial, arguing that the trial court erred (1) in allowing a witness to testify as to statements allegedly made by Fisher's co-indictee, Council, implicating Fisher in the crimes when the State had failed to make a prima facie showing of a conspiracy between Fisher and Council, and (2) charging the jury that it could consider the level of certainty of witnesses who gave an eyewitness identification of Fisher. Finding no reversible error, we affirm.

Viewed in the light most favorable to the verdict, the record shows that on Monday, May 5, 2003, assistant store manager Cynthia Robinson arrived at work at the Jet Food store in Sardis, at approximately 3:30 a.m. The store manager, Claudette Cleveland, arrived shortly thereafter. The two women proceeded to make a cash report and to prepare a deposit for the bank. At the time, there was over $3,000 in the store safe. Robinson and Cleveland banded up the money, put it in a deposit bag, and placed the bag under the desk in the store's office, located behind the check-out counter.

After the store opened at 5:00 a.m., Robinson was working behind the counter, and Cleveland was in the office putting the cash report in the computer. At approximately 5:30 a.m., a man entered the store and pulled out a gun. The man was wearing gloves, black jogging pants, black shoes, and a black hooded sweatshirt. The hood partially covered the man's face, but Robinson could see the top of his face and his eyes.

The man pointed the gun at Robinson and ordered her into the office. When Robinson and the armed man entered the office, Cleveland saw the intruder, but he then told Cleveland not to look at him and ordered Robinson to get on the floor. The man felt around underneath the desk and eventually found the deposit bag and threw it under his arm. At that point, he noticed video equipment that was set up in the office to record people going in and out of the store, and he put the gun to Cleveland's head and demanded the videotape. After he secured the videotape, the man left the store, and Cleveland called the police.

Another Jet Food employee, Rosie Rouse, was scheduled to work

that morning, and Rouse testified that as she was walking to work around 5:30 a.m., she encountered a man by a gas tank behind the store. The man called her name and said, "it's Manson." Rouse testified that even if the man had not identified himself, she would have recognized him as Manson, a man she knew from around town. Manson told Rouse to go home because "I'm fixing to take this store." She asked if he meant that he was going to rob the store, and he said yes. Manson was dressed in black, and Rouse could see that he had something in his hands. Because she was scared, Rouse did not report what she knew about the robbery until June 18, 2003, when she gave a statement to the police and the Georgia Bureau of Investigation ("GBI"). Rouse identified Fisher in court as the man she knew as Manson.

Robinson also testified at trial that, based on the perpetrator's mannerisms and voice, she recognized the perpetrator as a man she knew as Manson. Robinson knew Manson because his girlfriend, Gloria Rhodes, used to manage Jet Food but was fired for stealing money from the store.[1] Cleveland testified that she knew Manson because he had been in the store before and she had seen him around Sardis. She further stated that, like Robinson, she knew the intruder was Manson and that she recognized his voice. As soon as the intruder left, Cleveland told Robinson that the intruder was Manson, and Robinson agreed. Cleveland identified Fisher in court as the man she knew as Manson.

When Cleveland and Robinson gave their initial written statements to the police on the morning of the robbery, they did not identify Manson as the perpetrator. Robinson explained that she left out his name because she was still nervous and upset over the robbery. Robinson did, however, identify Manson to a GBI agent who arrived later. Cleveland testified that she might have left Manson's name out of her initial statement because she was scared of Manson.

The State also offered the testimony of Norbitt Tobias, a long-time acquaintance of Fisher's co-indictee, Council. Over defense counsel's objection, Tobias testified that shortly after May 5, 2003, he saw Council at a friend's house, and Council bragged about robbing the Jet Food store with a man named Manson.

GBI agent Doug Parker testified that he arrested Fisher on June 17, 2003 at a mobile home on Sunset Street in Sardis. Following the

---

[1] Rhodes also testified at trial and stated that after she was fired, Fisher asked her how big the store's deposits were. After she heard about the Jet Food robbery, Rhodes called Fisher and asked him if he did it, but he said no.

arrest and after advising Fisher of his rights, Parker interviewed Fisher at the Burke County Sheriff's Office. Fisher denied any involvement in the robbery but admitted that he goes by the nickname Manson, a nickname which is tattooed on his chest.

At trial, Fisher denied committing the robbery. He testified that he previously lived with his aunt on Sunset Street, he was there the morning of the robbery, and his aunt and her three daughters were also home. Fisher further testified that Council lived across the street and that he learned of the robbery from Council the morning it happened but that Council did not admit any involvement. Fisher's cousin, Ethel Ellison, corroborated that Fisher was staying with her family in May 2003 but stated that she could not remember specifically if he was there on May 5, 2003.

1. Initially, Fisher contends that the trial court erred in allowing Tobias to testify that shortly after May 5, 2003, he saw Council at a friend's house and that Council bragged about robbing the Jet Food store with Fisher. While we agree that the trial court erred in admitting Tobias' testimony, we find that such error was harmless.

The State offered Tobias' testimony in reliance on OCGA § 24-3-5, the co-conspirator exception to the hearsay rule. OCGA § 24-3-5 states that "[a]fter the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." The State may not rely on the co-conspirator exception in OCGA § 24-3-5 unless it "make[s] a prima facie showing of the existence of the conspiracy without resort to the declarations of the alleged co-conspirator. . . ." (Footnote omitted.) *Copeland v. State*, 266 Ga. 664 (2) (a) (469 SE2d 672) (1996).

Here, apart from Tobias' testimony, the State offered no evidence of a conspiracy between Fisher and Council, and the State does not argue otherwise. In fact, other State witnesses offered testimony tending to negate the existence of a conspiracy. For example, Robinson, who knew Council,[2] testified that she did not see Council inside or outside of the store before or after the robbery. She further stated that Council never said anything to her about committing a robbery. Rouse testified that she did not see anyone else around Fisher when she encountered Fisher on the day of the robbery. Because the State failed to establish a prima facie case of conspiracy, Tobias' hearsay testimony concerning Council's inculpatory statements was im-

---

[2] Robinson's fiancé was the first cousin of Fisher's co-indictee, Council.

504

properly admitted.[3]

A trial court's error in admitting hearsay is harmless, however, when the inadmissible testimony "is cumulative of legally admissible evidence of the same fact, where it does not touch on the central issue of the case, or it could not have contributed to the verdict in light of eyewitness testimony regarding the crime." (Citations and punctuation omitted.) *Navarrete v. State*, 283 Ga. 156, 160 (2) (656 SE2d 814) (2008); *Lyons v. State*, 269 Ga. App. 27, 30 (3) (b) (602 SE2d 917) (2004) (admission of police investigator's hearsay testimony was harmless in light of overwhelming evidence of identification by two victims and eyewitness). In this case, Cleveland and Robinson knew Fisher prior to the robbery, and both identified him as the man who robbed the store while holding them at gunpoint. Rouse, another store employee, encountered Fisher behind Jet Food just before the robbery, and he identified himself to her and advised her of his plans to rob the store. While Cleveland and Robinson omitted Fisher's name from their initial written statements and Rouse waited a number of weeks before coming forward to police, no evidence was offered that these witnesses ever identified anyone other than Fisher as the perpetrator or stated that they could not identify the person who committed the crimes. In view of the consistent eyewitness testimony implicating Fisher in the robbery and Fisher's admission to Rouse that he intended to rob the store, we find that the trial court's error in admitting Tobias' testimony was harmless. See *Felder v. State*, 270 Ga. 641, 646 (8) (514 SE2d 416) (1999) (harmless error occurs when it is "highly probable" hearsay did not contribute to verdict).

2. Further, Fisher claims that the trial court erred by giving the jury a pattern jury charge which stated that in assessing the reliability of witnesses' identification of Fisher, the jury could consider the level of certainty shown by the witnesses. Subsequent to Fisher's trial, the Supreme Court of Georgia disapproved of this "level of certainty" charge in *Brodes v. State*, 279 Ga. 435, 442 (614 SE2d 766) (2005). While we acknowledge that trial courts should follow the Supreme Court of Georgia's instruction in *Brodes* and "refrain from informing jurors [that] they may consider a witness's level of certainty when instructing them on the factors that may be considered in deciding the reliability of [an eyewitness] identification," (id.), we find that Fisher waived the right to challenge the trial court's level of certainty charge here.

---

[3] The State's brief admits that "[t]here was no testimony that the co-conspirator, Dave Council, Jr., was around the store at the time of the armed robbery."

In *Inman v. State*, 281 Ga. 67, 69 (2) (635 SE2d 125) (2006), the appellant, who was tried prior to the decision in *Brodes*, requested a charge on the level of certainty demonstrated by an eyewitness. Applying the principle that "[t]he act of requesting an instruction in the trial court constitutes a specific waiver of the right to enumerate it as error on appeal," the Supreme Court held that the appellant had waived the right to challenge the level of certainty charge on appeal. (Citation and punctuation omitted.) Id. Because the record reveals that Fisher, like the appellant in *Inman*, requested the level of certainty charge, Fisher waived the right to enumerate the charge as error in this Court. Id.; see also *Jordan v. State*, 278 Ga. App. 126, 129 (2) (628 SE2d 221) (2006) (appellant who requested level of certainty charge waived right to challenge charge on appeal).

For the reasons set forth above, we affirm the trial court's order denying Fisher's motion for a new trial.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JANUARY 12, 2009.

*Barbara B. Claridge*, for appellant.
*Rebecca A. Wright, District Attorney*, for appellee.