**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 1, 2013**

# In the Court of Appeals of Georgia

A13A0583. STROBEL v. THE STATE.

BARNES, Presiding Judge.

Following a jury trial, Steven Strobel was convicted of a single count of first degree arson. Following the denial of his motion for new trial, he now appeals that conviction, asserting that the trial court erred by admitting into evidence a credit card receipt – which he contends was an unauthenticated business record – without requiring the State to establish a proper foundation. Discerning no error, we affirm.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and [the defendant] no longer enjoys a presumption of innocence." (Citations and punctuation omitted.) *Jackson v. State*, 252 Ga. App. 268 (1) (555 SE2d 908) (2001). We determine only whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt, and in doing so we neither weigh that evidence nor judge the credibility of the witnesses. Id. The decision whether or not to admit an item into evidence is within

the discretion of the trial court, whose determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. Id. at 272 (4).

Viewed in the light most favorable to the verdict, the record shows that on January 18, 2009, the Forsyth County Fire Department responded to a fire at Strobel's girlfriend's home at about 4:30 a.m. No one was home at the time of the fire. One of the responding firefighters was suspicious because multiple racial slurs and a terroristic threat were "sprayed on the fence" and because of the lack of furniture in the house. An arson investigator with the fire department noted a strong gasoline odor on the basement floor and, based on the burn patterns, concluded that "it was a set fire."

An investigator with State Farm Insurance Company who was hired to investigate the cause of the fire also concluded that it had been cause by "an intentional human act." Carpet, padding, and other debris in the house tested positive for gasoline, and the investigator determined that no wiring or appliance failure was capable of causing the fire. A claims representative for State Farm testified that the girlfriend's home was insured for $273,300, with coverage up to $300,000 to rebuild, and replacement insurance for the contents of $204,975. He testified that he had found several fraud indicators including that the fire had occurred after 11 p.m., and

2

the fire was incendiary. The absence of the homeowners, the absence of the remains of personal items normally found in a home, and the absence of family pets were also fraud indicators.

When he was questioned about the fire, Strobel claimed that the couple had left the day before the fire to go to Washington, D. C. for the inauguration, but it was later determined that the couple had not traveled to Washington. Upon execution of a search warrant at Strobel's home, the arson investigator discovered "large amounts" of items belonging to the girlfriend, including clothing, shoes, jewelry, personal keepsakes, and financial records. Investigators executed a search warrant at two storage units that Strobel said he had rented for his girlfriend and discovered furniture, personal items, clothing, bins of family photographs, scrap books, and videotapes. Although Strobel told investigators that the items in the storage units were "stuff to put in [the girlfriend's] own yard sale," the items appeared to be "precious items" that she would be unlikely to sell.

Strobel admitted to the arson investigator that he had driven his girlfriend to her house "to set [it] . . . on fire." At the trial, he testified that the statement was a lie, that he had lied about the trip to the inauguration, that he had made the statement to get his girlfriend in trouble, and denied any involvement with the fire.

In his sole enumeration of error, Strobel contends that the trial court erred in admitting "unauthenticated" credit card receipts from a hotel in Charlotte, North Carolina pursuant to the business records exception to the hearsay rule, OCGA § 24-3-14.

Although hearsay evidence is generally inadmissible, OCGA § 24-3-14 provides an exception for the admission of business records that would otherwise be excluded as hearsay.[1]

> To introduce a writing under the business records exception to the hearsay rule, a witness must lay a foundation indicating that he or she is aware of the method of keeping the documents. It is not required that the witness made the records or kept them under his or her supervision or control. Instead, the witness must be able to testify that the record was

---

[1] OCGA § 24-3-14 (b) provides, in relevant part:
Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible in evidence in proof of the act, transaction, occurrence, or event, if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make the memorandum or record at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter.

.

4

made (1) in the regular course of business, and (2) at the time of the event or within a reasonable time of the event. The witness's lack of personal knowledge regarding how the records were created does not render them inadmissible, but merely affects the weight given to the evidence.

(Citations and punctuation omitted.) *Ross v. State*, 298 Ga. App. 525, 526-527 (680 SE2d 435) (2009).

Here, a deputy fire marshal involved in executing a search of the hotel rooms where Strobel's girlfriend was staying after the fire testified that they had recovered two credit receipts from a hotel in Charlotte dated January 18 and 19, 2008. Strobel objected that "there's no foundation. That's a business record," and that there was "no authentication." The trial court responded that it thought the objection was to hearsay, but Strobel said that he did not think the receipt was hearsay and he was not objecting on that basis. The trial court overruled the objection.

The State maintains that Strobel objected on the basis that the receipts were not properly authenticated rather than hearsay, and thus OCGA § 24-3-14 (b) is not applicable. It asserts that the inquiry into whether the receipts were properly admitted is pursuant to OCGA § 24-7-4 (4) and that because the receipts were only "collaterally material" to the case, the lack of authentication argument must fail.

Even assuming without deciding that a proper foundation was not presented for introduction of the receipts into evidence, we conclude that such error was harmless as Strobel admitted that he lied about the Washington trip and had instead gone to Charlotte. Because the hotel receipts were not critical but merely cumulative of evidence that was already before the jury through Strobel's own testimony, any error in admitting the receipts was harmless. *Taylor v. State*, 249 Ga. App. 538, 541 (2) (548 SE2d 662) (2001).

*Judgment affirmed. Miller and Ray, JJ., concur.*