**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 20, 2013**

# In the Court of Appeals of Georgia

A13A1403. BYRD v. THE STATE

RAY, Judge.

Following a jury trial, Darryl Byrd was found guilty beyond a reasonable doubt of one count of armed robbery (OCGA § 16-8-41 (a)), two counts of burglary (OCGA § 16-7-1 (b)), two counts of aggravated assault (OCGA § 16-5-21 (a)), two counts of possession of a firearm during the commission of a felony (OCGA § 16-11-106), and one count of possession of marijuana with the intent to distribute (OCGA § 16-13-30 (j)). He appeals from his convictions and the denial of his motion for new trial, contending that the trial court erred by allowing certain hearsay evidence to be introduced at trial. Byrd also contends that he received ineffective assistance of counsel. For the reasons that follow, we reverse the conviction for one count of aggravated assault (Count 3), and affirm his convictions on the remaining counts.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence. We determine only whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt, and in doing so we neither weigh that evidence nor judge the credibility of the witnesses.

(Citations omitted.) *Strobel v. State*, ___ Ga. App. ___ (745 SE2d 796) (2013).

So viewed, the record shows that on June 7, 2011, Shantoria Dennis and her boyfriend, Robert Lo, were at home watching television when someone knocked on their door. When they cracked opened the door to see who it was, they saw a tall, dark-skinned man holding a gun. The man kicked in the door and entered their residence, along with two other individuals, one described as a light-skinned boy with a red shirt and the other as a short, dark-skinned boy with a black shirt. The three assailants were wearing bandanas which partially concealed their faces. Shantoria ran to a back room of the house to call 911, and the three assailants surrounded Lo and demanded money. When Shantoria returned to check on Lo, she saw one of the assailants appear to hit Lo in the lip with the gun while demanding money. Shantoria then ran to a back bedroom and woke up Brenda Greer, who also lived at the residence, to let her know they were being robbed. A second call to 911 was made,

2

this time by Greer. The three assailants then ran out the door, got inside a dark-colored vehicle, and drove away. Shantoria later determined that her purse had been taken during the armed robbery.

Officer Rhett Davis was on patrol nearby when he received a dispatch to respond to the home invasion/armed robbery, and he was instructed to be on the lookout for a dark-colored vehicle containing three males. Officer Davis was familiar with the neighborhood where the home invasion took place, and he knew that the neighborhood had only one entrance and exit. As he approached the entrance to the neighborhood, he observed a dark-colored vehicle with four occupants exiting the neighborhood. Officer Davis ran the tag number and decided to initiate a traffic stop because the car matched the description of the getaway vehicle, it was in close proximity to the reported home invasion, and it had an inoperable brake light. Officer Davis activated his blue lights and followed the vehicle for "a little while" before it eventually pulled over to the side of the road. As Officer Davis was exiting his patrol car, the vehicle began inching forward and then sped off, leading Officer Davis on a high-speed chase through downtown Lawrenceville. Ultimately, the vehicle crashed as it was attempting to make a high-speed turn onto a roadway beside a RaceTrac gas station, and the occupants exited the vehicle and fled on foot.

Officer Davis and another responding officer were able immediately to apprehend the rear-left-seat passenger, Shelton Robinson, and the rear-right-seat passenger, Brenton Dennis, after a short pursuit on foot. Within minutes, two K-9 units arrived and began tracking the other two suspects. One K-9 unit located the driver, Demond Dennis, hiding on top of an air conditioner unit behind a nearby medical building. The other K-9 unit located the front-right-seat passenger, Byrd, hiding inside a trash dumpster behind a nearby business. Shelton Robinson, Brenton Dennis, and Byrd matched the description of the three perpetrators of the home invasion/armed robbery.

During a search of the vehicle, officers located Shantoria's purse, bandanas, and .38 caliber pistol ammunition. The officers also found a blue bag containing several smaller bags of marijuana, each weighing 28 grams.

When Byrd was transported to the Lawrenceville Police Department, Officer Davis advised him of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966). Byrd acknowledged that he understood his rights, and he indicated that he wished to speak with Officer Davis about the incident without an attorney. Thereafter, Byrd admitted to Officer Davis that he had entered the house

4

with Brenton Dennis and Shelton Robinson for the purpose of stealing marijuana, and that Robinson was the one who had taken Shantoria's purse.

At the conclusion of the evidence, the jury convicted Byrd on all counts in the indictment.

1. In his first enumeration of error, Byrd contends that the trial court erred in admitting Officer Davis' hearsay testimony concerning the registration of the vehicle that was used in the incident. Byrd argues that the State was required to introduce a properly authenticated printout of the Georgia Crime Information Center ("GCIC") computer record rather than merely relying on the officer's testimony.

At trial, Byrd made an oral motion in limine to exclude any testimony regarding the vehicle's registration or ownership, which the trial court denied. Thereafter, Officer Davis testified that he ran the vehicle's tag number through the GCIC database using a laptop computer in his patrol car and that the results indicated that the vehicle was registered to Melanie Byrd, with the registered address being in Atlanta, Georgia. Officer Davis further testified that he later discovered that the defendant, Byrd, also lived at this address. Byrd argues that the admission of the hearsay testimony regarding the vehicle's registration was unduly prejudicial because it linked him to the vehicle that was used in the incident.

5

We have held that where an officer runs a computer check of a tag, testimony regarding the results of the search is hearsay. *Green v. State*, 277 Ga. App. 867, 869 (1) n. 7 (627 SE2d 914) (2006). "The proper method of offering proof on this issue would have been through the introduction of a properly authenticated printout of the computer record rather than by the officer's testimony alone." (Citation and punctuation omitted.) Id. Although the trial court improperly allowed the hearsay testimony of the officer here, we find that the admission of this testimony "was harmless in light of the overwhelming direct and circumstantial evidence against [Byrd]." (Citation omitted.) *Holland v. State*, 310 Ga. App. 623, 627 (3) (714 SE2d 126) (2011) (improper admission of hearsay testimony regarding results of computer search of vehicle's registration was harmless in light of overwhelming evidence).

2. In a compound enumeration of error, Byrd alleges that his trial counsel was ineffective in failing to object to two improper jury charges, in not renewing an objection to an improper prior inconsistent statement of a witness, and in not seeking any remedies for prejudicial hearsay that was injected into the trial. We shall address each ground in turn.

A criminal defendant asserting an ineffective assistance of counsel claim bears the burden of showing (1) that counsel's performance was deficient and (2) that the

deficient performance prejudiced the defense by creating "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U. S. 668, 694 (III) (B) (104 SCt 2052, 80 L.Ed.2d 674) (1984). "The likelihood of a different result must be substantial, not just conceivable." (Citation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012). We are not required to address both the deficient performance and prejudice prongs of the test if the defendant has made an insufficient showing on either one of them, and "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, supra at 697 (IV). Further, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Hill*, supra.

(a) In Count 3 of the indictment, Byrd is charged with committing an aggravated assault upon Robert Lo by striking him in the face with a deadly weapon, a handgun. To convict Byrd of aggravated assault as indicted, the State was required to prove that the handgun was used as a deadly weapon. See OCGA § 16-5-21 (a) (2).

7

After instructing the jury on the definition of assault, the trial court gave the following charge to the jury:

> The State must also prove as a material element of aggravated assault, as alleged in this case, that the assault was made with a deadly weapon. A firearm, when used as such, is a deadly weapon as a matter of law.[1]

Byrd contends that the portion of the charge which states that "[a] firearm, when used as such, is a deadly weapon as a matter of law" was not applicable to Count 3, and that it removed from the jury's province the issue of whether the handgun was a deadly weapon based on the manner in which it was alleged to have been used. Byrd argues that trial counsel was ineffective for failing to object to this portion of the charge. We agree.

Several cases, in the context of deciding whether or not the State had proved that an instrument used to commit an assault was a deadly weapon, have held that an apparently functional firearm (whether or not actually functional) used in the manner in which a firearm is ordinarily used, i.e. by pointing the gun or using it to shoot at someone, is a deadly weapon per se. This is so because the firearm, when used in

---

[1] The trial court gave a separate instruction to the jury regarding the aggravated assault charge in Count 4, which alleged that Byrd assaulted Lo, with the intent to rob, by pointing the handgun at him.

8

such a manner, would reasonably appear to the victim to be deadly. See *Adsitt v. State*, 248 Ga. 237, 240 (6) (282 SE2d 305) (1981); *Morris v. State*, 149 Ga. App. 21 (253 SE2d 421) (1979); *Watts v. State*, 142 Ga. App. 857, 858-859 (4) (237 SE2d 231) (1977).

In Count 3, however, the handgun was not alleged to have been used in the ordinary manner in which a gun is used; it was alleged to have been used as a bludgeon or club.[2] Therefore, the circumstances surrounding the use of the handgun, are crucial. See *Gober v. State*, 247 Ga. 652, 653, 655 (4) (278 S.E.2d 386 (1981) (whether gun was used as a deadly weapon might have been an issue for the jury where evidence showed only that defendant hit victim on the side of the head with it).

Since the law requires the State to prove all elements of a crime, there must be some evidence to show the circumstances surrounding the use of the handgun to strike Lo on his lip, such as the degree of force used, the likelihood of serious injury, or the nature of the injuries actually received. See generally *Williams v. State*, 127 Ga. App. 386, 389 (2) (193 SE2d 633) (1972). Compare *Green v. State*, 221 Ga. App.

---

[2] An issue of a lesser included offense, such as battery, may arise where the use of a deadly weapon is not necessarily proved, or where the manner of use and character of the weapon is in question. (Citations omitted.) *Scott v. State*, 208 Ga. App. 561, 561 (1) (430 SE2d 879) (1993).

694, 695 (2) - 696 (3) (472 SE2d 457) (1996) (affirming a conviction for aggravated assault where witness testified that defendant hit the victim in the head with the pistol so violently that it sounded like a shot and resulted in bleeding); *Ortiz v. State*, 292 Ga. App. 378, 381 (2) (665 SE2d 333) (2008) (aggravated assault established where the evidence showed, without conflict, that defendant struck the victim with a handgun so violently that it caused the victim to bleed, and victim testified that, during the attack, he was afraid because he thought he was going to be killed). Here, the evidence produced by the State failed to show any details about the use of the handgun as alleged in Count 3 of the indictment that would render the handgun a "deadly weapon" as a matter of law.[3]

Under these particular circumstances, trial counsel was ineffective for failing to object to the trial court's instruction that "[a] firearm, when used as such, is a deadly weapon as a matter of law." The trial court's instruction seemly removes from the jury's province the question of whether the State had established an essential element of aggravated assault in Count 3, i.e. the use of the handgun as a deadly

---

[3] Immediately after the incident, Lo stated to the police that he was hit in the lip with a gun. At trial, however, Lo testified that he was struck in the back of his head with a hand or a fist, and he did not recall being hit with a gun. Although this would normally be a credibility issue, we note that there was no evidence in the record that Lo suffered any injury.

weapon. Additionally, the facts as proven cannot support a conclusion that the firearm was used as a deadly weapon as it must have been so used due to the language of the indictment. Thus, the requisite prejudice for trial counsel's ineffective assistance has been shown. Accordingly, Byrd's conviction for aggravated assault in Count 3 of the indictment must be reversed.

(b) With regard to Byrd's custodial statement to the police, the trial court instructed the jury to first determine whether Byrd was advised of his *Miranda* rights and, if so, whether he knowingly and voluntarily waived those rights before making his statement. The trial court further charged the jury as follows:

> If you find that all warnings as to the defendant's constitutional rights were given, that the defendant did understand the meaning of what was said and knowingly gave up such rights, and that the statement was voluntary, then you may consider it as evidence. If so, then you must apply the general rules for testing the believability of witnesses and decide what weight, if any, you will give to all or part of such evidence. If you fail to find any one of the conditions that I have just described, you must disregard the statement entirely and give it no consideration in reaching your verdict except for purposes of impeachment.

Byrd contends that, because he did not testify at trial, the inclusion of the phrase "except for purposes of impeachment" was harmful error because it allowed

11

the jury to consider the statement even if the jury found that his statement was obtained in violation of his *Miranda* rights. Byrd thus contends that his trial counsel was ineffective for failing to object to this portion of the charge.

"The only requirement regarding jury charges is that the charges, as given, were correct statements of the law and, as a whole, would not mislead a jury of ordinary intelligence." (Citation and punctuation omitted.) *Griffiths v. State*, 283 Ga. App. 176, 180-181 (3) (641 SE2d 169) (2006). Here, the trial court specifically instructed the jury to disregard Byrd's statement and to limit it for the purposes of impeachment if the jury found that the statement was obtained in violation of his *Miranda* rights. With regard to impeachment, the trial court instructed the jury that "[a] witness may be impeached by disproving the facts to which the witness testified . . . or by proof of contradictory statements previously made by the witness about matters relevant to the witness's testimony and to the case." Byrd did not testify at trial nor did he present any witnesses, so there was obviously no testimony to impeach.

As the jury was instructed that the law on impeachment only applies to witnesses who testify at trial, any error committed in the portion of the charge that would have limited Byrd's statement "for purposes of impeachment" was harmless.

12

See *Biswas v. State*, 255 Ga. App. 339, 343-344 (3) (565 SE2d 531) (2002) (any error in giving a charge on impeachment was harmless where defendant did not testify at trial and there was no testimony to be impeached). When considering the trial court's charge as a whole, we find that the jury would have understood that it could only consider Byrd's statement if the jury found that the protections of *Miranda* were satisfied. Accordingly, Byrd has failed to show the prejudice prong of this ineffective assistance claim.

(c) At trial, the State called one of the victims, Shantoria, to testify about what she saw and heard when Byrd and his co-defendants broke into her home. On cross-examination, defense counsel attempted to place her veracity in issue by pointing out the favorable disposition she had received on a recent possession of marijuana charge, her jail visit with one of the co-defendants during the pendency of the case,[4] and certain inconsistencies in her trial testimony and her prior statement to the police.

Thereafter, the State called the officer who had obtained Shantoria's statement for the purpose of eliciting testimony regarding her prior consistent statement. Byrd's trial counsel objected on the grounds that such testimony was cumulative and would

---

[4] Trial counsel elicited testimony from Shantoria during cross-examination that one of Byrd's co-defendants, Demond Dennis, was her second cousin.

13

constitute improper bolstering of Shantoria's trial testimony. Without specifically ruling on the objection, the trial court allowed the officer to refresh his recollection by reviewing Shantoria's written statement and then testify regarding her prior consistent statement. On appeal, Byrd argues that counsel was ineffective for failing to pursue his objection to this testimony. We disagree.

> Under the former version of Georgia's Evidence Code,
>
> a witness's prior consistent statement is admissible if the veracity of the witness's trial testimony has been placed in issue at trial, the witness is present at trial, and the witness is available for cross-examination.[5] A witness's veracity is placed in issue if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination. For the prior consistent statement to be admissible, it must also predate the alleged fabrication, improper influence, or improper motive.

(Citation and punctuation omitted.) *Williams v. State*, 292 Ga. 844, 849-850 (3) (c) (742 SE2d 445) (2013).

_____

[5] As this case was tried before January 1, 2013, our new Evidence Code does not apply. See Ga. L. 2011, pp. 99, 214, § 101. As to the admissibility of prior consistent statements under the new Evidence Code, see OCGA §§ 24-6-613 (c) and 24-8-801 (d) (1) (A).

14

Although Byrd contends otherwise, trial counsel's line of questioning raised the implication that Shantoria's trial testimony was recently fabricated, and that she might have had an improper purpose or motive for testifying as she did at trial. As the testimony concerning Shantoria's prior consistent statement was properly admitted, Byrd has failed to show deficient performance on the part of trial counsel. See *Ventura v. State*, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008) ("The failure to pursue a futile objection does not amount to ineffective assistance") (citation omitted).

(d) At trial, the State recalled Shantoria to the witness stand in rebuttal to defense counsel's cross-examination concerning her recent jail visit with the co-defendant, Demond Dennis. The prosecutor asked Shantoria what the co-defendant had told her during the visit, and in response, she stated that "[h]e just apologized." Trial counsel immediately objected to this response on the grounds of hearsay, and the jury was excused from the courtroom. After the prosecutor and trial counsel presented argument to the court, Shantoria was excused from the witness stand, and the jury was brought back in. No ruling on the objection was made in the presence of the jury, and no curative instruction was given. On appeal, Byrd argues that trial counsel was ineffective for failing to seek any remedy for the introduction of this hearsay statement.

15

We note that Shantoria's statement does not specify what the co-defendant was apologizing for, but in light of the context of the prosecutor's line of questioning, a strong inference could be made that he was apologizing for his role in participating in the crimes for which he was arrested. Although the co-defendant's apology to Shantoria did not make any specific reference to Byrd, it indirectly implicated Byrd because the evidence showed that Byrd and his co-defendants had participated in the crimes together. Nevertheless, we find that the admission of the statement does not warrant reversal.

The admission of hearsay is harmless when the inadmissible testimony is cumulative of legally admissible evidence of the same fact, or where it could not have contributed to the verdict in light of all of the other evidence introduced at trial. See *Fisher v. State*, 295 Ga. App. 501, 504 (1) (672 SE2d 476) (2009) (Error in admitting statements of defendant's co-indictee which implicated the defendant was harmless where defendant was identified as the perpetrator by two witnesses had admitted to a third witness that he intended to commit the crime).

Here, there was overwhelming direct and circumstantial evidence of Byrd's guilt. Within minutes of the incident, the police encountered Byrd and his co-defendants leaving the area where the home invasion had occurred; they led the

16

police on a high-speed chase before wrecking their vehicle and fleeing on foot; they were apprehended in the same area shortly thereafter; and bandanas, bags of marijuana, .38 caliber ammunition, and the purse that had been taken during the armed robbery were all found in their vehicle. Furthermore, Byrd admitted to the police that he was involved in the home invasion.[6]

As it is highly improbable that the admission of Shantoria's objectionable testimony contributed to the guilty verdict, we find that trial counsel's failure to move for a mistrial or request a curative instruction was harmless. See generally, *Watkins v. State*, 289 Ga. 359, 362-363 (3) (b) (711 SE2d 655) (2011). The hearsay statement was relatively benign, considering the strength of the State's case and Byrd's own confession to the police. Byrd has failed to show that had trial counsel moved for a mistrial or requested a curative instruction that there is a reasonable probability that the trial court would have granted a mistrial or that the outcome of the trial otherwise would have been different. Id. Therefore, Byrd has failed to show that he was prejudiced by trial counsel's performance.

---

[6] We have held that "[w]here the testimony presented in the co-defendant's confession is supported by the complaining defendant's own confession, there is no violation of appellant's right of confrontation." (Citation and punctuation omitted.) *Moore v. State*, 176 Ga. App. 882, 885 (3) (339 SE2d 271) (1985).

(e) Lastly, Byrd asserts that this Court should consider the combined prejudicial effect of trial counsel's deficiencies. In Division 2 (a) of this opinion, we reverse Byrd's conviction for aggravated assault in Count 3 of the indictment based on ineffective assistance. Applying the standard set forth in *Strickland*, supra, even if counsel were deficient in certain other respects, we conclude that the collective effect of the deficiencies would not in reasonable probability have changed the outcome of the trial with regard to the remaining counts. See *Bulloch v. State*, 293 Ga. 179, 183-184 (2) (744 SE2d 763) (2013); *Toomer v. State*, 292 Ga. 49, 59 (4) (734 SE2d 333) (2012).

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Miller, J., concur.*