**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 29, 2019**

# In the Court of Appeals of Georgia

A19A0684. GONZALEZ v. THE STATE.

COOMER, Judge.

After a jury trial, Hayden Gonzalez ("Gonzalez") was convicted of aggravated assault (OCGA § 16-5-21), false imprisonment (OCGA § 16-5-41), and violation of the Georgia Controlled Substances Act: possession of less than one ounce of marijuana (OCGA § 16-13-30 (j)). Gonzalez filed a motion for new trial, which the trial court denied. Gonzalez appeals, arguing (1) that the trial court erred by instructing the jury that a firearm, when used as such, is a deadly weapon as a matter of law; (2) that he received ineffective assistance of counsel; and (3) that the trial court erred by prohibiting him from presenting evidence of a statement made by his brother. Finding no reversible error, we affirm Gonzalez's convictions.

On December 23, 2016, the victim was at a restaurant with his girlfriend and her sister. Gonzalez came into the restaurant with his brother, Arnel Gonzalez ("Arnel"), and Sharise Williams ("Williams"). Arnel initiated a conversation with the victim, who agreed to sell a quantity of marijuana to Arnel for $60. However, the victim needed to get the marijuana from his house. The victim left the restaurant with his girlfriend and her sister and drove to his house. Gonzalez, Arnel, and Williams followed them in another car. Gonzalez was driving, Williams was in the front passenger seat, and Arnel was in the back seat.

When they got to the house, the victim went inside and got the marijuana. The victim then came back outside and got into the back seat of the car Gonzalez was driving with Arnel. Arnel took the marijuana from the victim, then put a handgun to the victim's temple. Arnel demanded that the victim give him his money and started feeling the victim's pockets. Gonzalez started driving while Arnel was still holding the gun to the victim's head. The victim tried to get out of the car. Arnel told Gonzalez to make sure that the door was locked. However, the door unlocked and the victim was able to get out of the vehicle. When the victim got out of the car, Arnel got out on the other side and fired a shot into the air. He then pointed the gun at the victim while walking toward him. The victim stuck his finger inside the guard of the

gun and he and Arnel wrestled for the gun. Gonzalez and Arnel both grabbed the victim and began hitting, kicking, and biting him. They hit the victim two or three times in the head with the gun. The victim took a knife from his pocket, but when he tried to open the knife, Gonzalez and Arnel were able to knock it out of his hands.

The victim's sister came out of the house and ran to her brother. Arnel pointed the gun at both the victim and his sister. The victim's sister placed herself between the gun and her brother. Gonzalez, Arnel, and Williams got back in their car and drove away.

The victim's girlfriend called 911. One of the responding officers described the victim as being "dazed from his injuries." The same officer found a puddle of blood on the ground. The victim had open wounds on the back of his head and was bleeding badly from being struck with the handgun. His sister described her brother's head as being "split open" and testified that she "could see like the inside and everything." The victim went to the hospital and received numerous staples in his head.

Gonzalez was detained by police later the same day. Before being searched by a police officer, Gonzalez told the officer that he had a small amount of marijuana in his sock. The officer took the marijuana from Gonzalez and issued him a citation for possession of less than one ounce of marijuana.

Gonzalez, Arnel, and Williams were all indicted on one count of kidnapping with bodily injury, one count of aggravated battery, three counts of aggravated assault, one count of false imprisonment, and one count of possession of a firearm during the commission of a felony. Gonzalez and Arnel were also indicted on one count of violation of the Georgia Controlled Substances Act: possession of less than one ounce of marijuana. Gonzalez was tried separately from his co-defendants. During his closing argument, Gonzalez's counsel admitted that Gonzalez possessed marijuana as alleged in the indictment. Gonzalez was convicted of aggravated assault, false imprisonment, and possession of less than one ounce of marijuana.

Gonzalez filed a timely motion for new trial. After a hearing, the trial court denied the motion, and this appeal followed.

1. Gonzalez contends that the trial court erred by instructing the jury that a firearm, when used as such, is a deadly weapon as a matter of law. Because Gonzalez did not object to the jury charge at trial, it is subject only to plain error review on appeal. *See* OCGA § 17-8-58 (b). The standard for reviewing for plain error provides:

First, there must be an error or defect - some sort of deviation from a legal rule - that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the

4

error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error - discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Thus, beyond showing a clear or obvious error, plain-error analysis . . . requires the appellant to make an affirmative showing that the error probably did affect the outcome below.

*Gates v. State*, 298 Ga. 324, 327 (3) (781 SE2d 772) (2016) (citations and punctuation omitted).

Count 3 of the indictment charged Gonzalez with aggravated assault by assaulting the victim "with a handgun, a deadly weapon, by pointing a handgun at [the victim.]" Count 4 charged him with aggravated assault by assaulting the victim "with a handgun, a deadly weapon, by hitting [the victim] in the head with a handgun[.]" Count 5 charged him with aggravated assault by assaulting the victim's sister "with a handgun, a deadly weapon, by pointing a handgun at [the victim's sister.]"

The trial court gave the following charge regarding aggravated assault:

A person commits the offense of aggravated assault when that person assaults another person with a deadly weapon. To constitute such an

5

assault, actual injury to the alleged victim need not be shown. It is only necessary that the evidence show beyond a reasonable doubt that the defendant intentionally committed an act that placed the alleged victim in reasonable fear of immediately receiving a violent injury. The State must also prove as a material element of aggravated assault, as alleged in this case, that the assault was made with a deadly weapon. A firearm, when used as such, is a deadly weapon as a matter of law.

The jury found Gonzalez guilty of aggravated assault on count 4 and not guilty of aggravated assault on counts 3 and 5. Gonzalez argues that the jury charge was erroneous with regard to count 4 because in that count, the firearm was alleged to have been used as an object to hit the victim, not used as a firearm is ordinarily used. Gonzalez contends that the final sentence of the charge on aggravated assault amounted to a mandatory presumption and removed from the jury the determination of whether the firearm was a deadly weapon.

In *Byrd v. State*, 325 Ga. App. 24 (752 SE2d 84) (2013), the defendant was similarly charged with aggravated assault for striking the victim in the head with a handgun. In that case, we found that the defendant's trial counsel was ineffective for failing to object to the jury instruction that a "firearm, when used as such, is a deadly weapon as a matter of law." *Id.* at 27-28 (2) (a). In so holding, we found that the charge was not applicable to the facts of the case because the handgun was not

6

alleged to have been used in the ordinary manner in which a gun is used - i.e., by pointing the gun or using it to shoot at someone; it was alleged to have been used as a bludgeon or club. *Id*. at 28 (2) (a). The State failed to introduce evidence showing the circumstances surrounding the use of the handgun, such as the degree of force used, the likelihood of serious injury, or the nature of the victim's injuries. *Id.* In reversing the aggravated assault conviction, we found that there was a reasonable probability that, but for counsel's error, the outcome of the trial would have been different because the evidence did not support a conclusion that the handgun had been used as a deadly weapon. *Id.* at 29 (2) (a).

We have subsequently distinguished *Byrd*. In *Howell v. State*, 330 Ga. App. 668 (769 SE2d 98) (2015), as in *Byrd*, the defendant was charged with aggravated assault for striking the victim in the head with a handgun. The trial court instructed the jury that "the State had the burden of proving the material element that the assault was made with a deadly weapon, as alleged in the indictment." *Id.* at 673 (2). The trial court also instructed the jury that "a handgun, when used as such, is a deadly weapon as a matter of law." *Id.* (punctuation omitted). In *Howell*, we found that there was overwhelming evidence to establish that the handgun constituted a deadly weapon. *Id.* at 674 (2). The evidence in that case showed that the defendant struck the victim

7

on the side of her head with a handgun so violently that it knocked her down and caused the side of her head to swell and bleed. *Id.* Applying a plain error analysis, we noted that the "jury was told that the State must prove that the assault was with a deadly weapon and that a handgun would be one, depending on how it was used. The jury was free to decide either way." *Id.* We held that, even if the jury instructions were erroneous, the defendant had failed to show that any error in the charge likely affected the outcome of his trial or that any error seriously affected the fairness, integrity, or public reputation of the proceedings. *Id.* at 674-675 (2).

Here, the jury instructions were similar to those in *Howell*. The jury was told that the State must prove that the assault was made with a deadly weapon and that a firearm, when used as such, is a deadly weapon as a matter of law. The jury was free to decide that a firearm, when not used as such, is not a deadly weapon. As in *Howell*, there was overwhelming evidence to establish that the handgun constituted a deadly weapon. The evidence was undisputed that the victim was struck several times in the head with the handgun, which resulted in open, bleeding wounds. The victim's sister described his head as being "split open" where she "could see inside and everything." After being taken to the hospital, the victim received numerous staples in his head.

8

One of the responding officers observed a puddle of blood on the ground and described the victim as being "dazed from his injuries."

Even if the jury instructions were erroneous as to count 4, Gonzalez has not demonstrated that any error probably affected the outcome of the trial court proceedings. Gonzalez has failed to show that, had the correct charges been given, the jury probably would have acquitted him of the aggravated assault charge. Moreover, in light of the overwhelming evidence that the handgun constituted a deadly weapon under the circumstances of this case, we find that any error in the charge did not seriously affect the fairness, integrity, or public reputation of the proceedings. As Gonzalez has failed to satisfy the third and fourth prongs of the plain error analysis set forth above, we find no reversible error.

2. Gonzalez next contends that his trial counsel rendered ineffective assistance by failing to object to the trial court's jury instruction that a firearm, when used as such, is a deadly weapon as a matter of law. To prevail on an ineffective assistance of counsel claim, a criminal defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance so prejudiced him that there is a reasonable probability that, but for the counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 687 (III), 694

9

(III) (B) (104 SCt 2052, 80 LEd2d 674) (1984). "The likelihood of a different result must be substantial, not just conceivable." *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012) (citation omitted).

> To establish deficient performance, the defendant must show that [his] counsel's acts or omissions were objectively unreasonable, considering all of the circumstances at the time and in light of prevailing professional norms. To establish prejudice, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Scott v. State*, 301 Ga. 573, 575 (2) (802 SE2d 211) (2017) (citation and punctuation omitted). If Gonzalez fails to satisfy either prong of the *Strickland* test, we need not address the other prong. *See Lupoe v. State*, 300 Ga. 233, 240 (2) (794 SE2d 67) (2016). When a trial court determines that a defendant did not receive ineffective assistance of counsel, we will affirm that decision unless it is clearly erroneous. *Muldrow v. State*, 322 Ga. App. 190, 193 (2) (b) (744 SE2d 413) (2013).

In its order denying Gonzalez's motion for new trial, the trial court determined that Gonzalez failed to meet the standard to prove ineffective assistance of counsel. The trial court concluded that even if the jury charge was erroneous and Gonzalez's

10

trial counsel should have objected, Gonzalez cannot show a reasonable probability that the outcome of the trial would have been different if he had objected. As discussed in Division 1, the overwhelming evidence introduced at trial showed that the handgun was used as a deadly weapon. Thus, Gonzalez has not demonstrated that there is a reasonable probability that the outcome of his trial would have been different if his counsel had objected to the charge. Because the trial court's decision that Gonzalez did not receive ineffective assistance of counsel was not clearly erroneous, this enumerated error fails.

3. Finally, Gonzalez contends that the trial court erred when it prohibited him from presenting evidence of a statement against interest made by Arnel. "We review a trial court's ruling on the admission of evidence under an abuse of discretion standard." *Ford v. State*, 274 Ga. App. 695, 697 (1) (617 SE2d 262) (2005). Gonzalez sought to introduce under OCGA § 24-8-804 (b) (3) a custodial statement by Arnel that Gonzalez did not know that Arnel was not going to pay the victim for the marijuana. The trial court ruled that this part of Arnel's custodial statement was not a statement against interest. Even if we assume that the trial court's ruling was incorrect, any error in not admitting this statement would be harmless error. Whether Gonzalez knew that Arnel was not going to pay for the marijuana is not relevant to

11

the aggravated assault, false imprisonment, and possession of less than one ounce of marijuana charges of which he was convicted. Regardless of whether Gonzalez knew that Arnel was going to take the marijuana without paying for it, the evidence presented at trial showed that Gonzalez was an active participant in the crimes of which he was convicted. Georgia law is clear that "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). Accordingly, this enumeration of error fails.

*Judgment affirmed. Doyle, P. J., and Markle, J., concur.*