**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**February 17, 2015**

# In the Court of Appeals of Georgia

A14A1634. MCCULLOUGH v. THE STATE.

BARNES, Presiding Judge.

Based on evidence that he had multiple videos of child pornography on his laptop computer, a jury found Kyle Jameson McCullough guilty of five counts of sexual exploitation of children. McCullough filed a motion for a new trial, which the trial court denied. On appeal, McCullough contends that the trial court committed plain error in its charges to the jury on the law of deliberate ignorance, equal access, and the use of custodial statements for impeachment purposes. For the reasons discussed below, we conclude that there was no plain error and therefore affirm.

"Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to sustain the verdict." *Anthony v. State*, 317 Ga. App. 807 (732 SE2d 845) (2012). So viewed, the evidence showed that on January 7, 2010, an undercover detective with the Paulding County Sheriff's Office conducted a search for child pornography on LimeWire, a

peer-to-peer file-sharing program that was available for free over the Internet at the time in question, and which allowed users to search for and download files stored in a shared folder on other users' computers. See *United States v. Conner*, 521 Fed. Appx. 493, 494-495 (6th Cir. 2013) (explaining LimeWire); *United States v. Stults*, 575 F.3d 834, 842 (8th Cir. 2009) (same). The detective used specialized software developed by the Federal Bureau of Investigation to detect files that LimeWire users made available for download that might contain child pornography. Using this software, the investigator identified four suspicious files made available for sharing by a particular computer, downloaded them, and confirmed that they contained images of child pornography. On January 30, 2010, the detective downloaded an additional file containing child pornography while searching LimeWire that appeared to come from the same computer.

Through a subpoena to the internet service provider, the detective traced the Internet Protocol ("IP") address for the computer sharing the child pornography to the residence where McCullough and his roommate resided in Douglas County. The detective also was able to identify the "GUID," or "global unique identifier," that had been assigned by LimeWire to the specific computer sharing the child pornography. The detective turned over copies of the child pornography files that he had

2

downloaded and placed on an encrypted disk, the IP address information, and the GUID information to the Georgia Bureau of Investigation (the "GBI"), which applied for and obtained a search warrant for the residence of McCullough and his roommate.

On April 28, 2010, special agents with the GBI and the Douglas County Sheriff's Office executed the search warrant for child pornography at the residence. McCullough and his roommate, along with McCullough's girlfriend, were present at the time of the search. During the search, agents found McCullough's Toshiba laptop computer with his wallet and cell phone on top of it on the nightstand next to his bed. A GBI forensic computer specialist conducted a preliminary search of McCullough's laptop and discovered images of child pornography, leading the GBI agents to seize the laptop so that a more complete forensic analysis could be conducted.[1] The computer specialist also conducted a preliminary search of two other computers in the residence, including the roommate's desktop computer, and neither contained any images of child pornography. The computer specialist also discovered as part of her preliminary search that the GUID assigned by LimeWire to the specific computer

---

[1] Agents also seized various illegal drugs from the residence. McCullough pled guilty to several drug-related offenses, but his convictions on those counts were not at issue at trial or in this appeal.

3

sharing the child pornography matched the GUID on McCullough's laptop rather than the other computers at the residence.

During the execution of the search warrant, McCullough, his roommate, and his girlfriend were brought into the living room of the residence, where an investigator with the Douglas County Sheriff's Office stayed with them. McCullough, who was "visibly upset," asked the investigator "what was going on." When the investigator told McCullough that the search warrant was for child pornography, McCullough began rocking back and forth and rubbing his face with his hands, and he told the investigator that he did not think that he could get in trouble for having "it" on his computer. McCullough also told the investigator that his friends had used his computer from time and time and he did not know what they had viewed. However, McCullough admitted to the investigator that he had looked "at animals and other crazy stuff" on his computer, but insisted that he was not a pedophile.

One of the GBI special agents carried a digital audio recorder to memorialize any statements made to her during the execution of the warrant. The special agent first spoke separately with McCullough's roommate, who denied that he had ever used McCullough's laptop. After speaking with the roommate, the GBI special agent approached McCullough and read to him from a form advising him of his rights under

4

*Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).[2] The special agent asked McCullough if he understood his rights, and he responded, "I'm doubtful, I am just kind of numb," and "I don't really understand it." The special agent again asked McCullough if he understood his rights, if he wanted to speak with her, and if he wanted to give a reason for what the agents were finding, and he answered, "I guess not, I don't really have a reason." The special agent continued to seek a definitive answer from McCullough, who continued to give equivocal responses, including "I really don't have an explanation." Finally, the special agent asked, "You don't have a problem talking to me just like we are doing right now, no issues?" McCullough responded, " I guess not." The special agent then briefly asked McCullough about one of the computers and explained that if the police found anything on it, further action would be taken.

---

[2] Before the GBI agent advised McCullough of his *Miranda* rights, the Douglas County investigator who had already been speaking with McCullough in the living room prodded him to provide a more complete explanation and encouraged him to "do the right thing" and to "come forth and be clean." The trial court concluded that the investigator should have advised McCullough of his rights under *Miranda* before prodding him further about what had occurred. Consequently, the trial court excluded from trial comments that McCullough made in response to the investigator's prodding up to the point when he was advised of his rights under *Miranda* by the GBI special agent. In contrast, McCullough's initial comments made to the Douglas County investigator in the living room, discussed in the preceding paragraph of this opinion, were not excluded.

5

McCullough was arrested and transported to the Douglas County Sheriff's Office, where the GBI special agent again advised him of his rights under *Miranda* in a video recorded interview. McCullough initially invoked his right to counsel but initiated further communication with the special agent about what was taken from his residence.[3] McCullough went on to tell the special agent that he "never had a problem getting a girlfriend" and "never thought about anybody underage." But McCullough said that "if there's anything on there," it was like "looking at a train wreck," or looking at "weird things," or "people do[ing] weird stuff." McCullough also told the special agent that there was "animal stuff" on the laptop that he knew was illegal, but that it was just the "weirdness of it," the "shock factor." McCullough said that he was "just tore up about this" and expressed concern that "people are going to be looking at me like I'm some kind of pedophile, and I'm not."

A different GBI forensic computer specialist subsequently conducted a more detailed analysis of McCullough's laptop. The computer specialist discovered 41

---

[3] At trial, McCullough expressly waived any jury instruction on whether he had asserted or waived his right to counsel during his interrogation at the Douglas County Sheriff's Office or on whether his statements during that interrogation were voluntary. Consequently, the video recording of that interrogation played for the jury omitted the portion in which McCullough was advised of his rights under *Miranda* and initially invoked his right to counsel.

videos containing images of child pornography in the LimeWire folder designated for shared files. The videos included images of young girls involved in sexual acts with grown men and with animals. The LimeWire folder and the files within the program that contained the child pornography were stored under the user name "Kyle," McCullough's first name. The computer specialist conducted a similar forensic analysis on the desktop computer of McCullough's roommate, but she did not discovery any images of child pornography on it.

McCullough was indicted and tried before a jury on five counts of sexual exploitation of children for the child pornography discovered on his laptop. At trial, the State introduced into evidence disks containing the 41 videos of child pornography discovered on McCullough's laptop and played portions of them to the jury, and called as witnesses the previously mentioned law enforcement officials who testified to events as summarized above. Additionally, the State called McCullough's roommate as a witness, who denied ever using McCullough's laptop or searching for or viewing child pornography on his own desktop computer. Portions of the audio recording of the statements made by McCullough at his residence during the execution of the search warrant, and of the video recording of his statements made at the Douglas County Sheriff's Office, also were introduced and played for the jury.

Lastly, the State presented expert forensic testimony aimed at linking McCullough to the LimeWire program on his laptop and the downloads of child pornography through texts and pictures found on his cell phone.

McCullough did not contest that his laptop contained child pornography. Rather, McCullough's sole defense was that he did not know that the child pornography was on his laptop and that his roommate had equal access to the his laptop and thus had the opportunity to place the child pornography on it without his knowledge. To support his theory of the case, McCullough called defense witnesses who testified that they had seen McCullough's roommate using his laptop. McCullough also presented the testimony of an expert forensic computer specialist in an effort to discredit the testimony of the State's expert and link the roommate to the laptop. McCullough himself elected not to testify.

Following the presentation of the conflicting witness testimony, the parties' closing arguments, and the charge of the trial court, the jury found McCullough guilty of the charged offenses. McCullough moved for a new trial, and the trial court denied the motion. This appeal followed in which McCullough challenges three jury charges given by the trial court and argues that he is entitled to a new trial.

Because McCullough did not object at trial to the jury charges that he now challenges on appeal, we review the charges only for plain error. See OCGA § 17-8-58 (b); *Booker v. State*, 322 Ga. App. 257, 260 (2) (744 SE2d 429) (2013).

> Under *State v. Kelly*, 290 Ga. 29 (718 SE2d 232) (2011), we are bound to consider whether the trial court committed plain error as to a charge by considering four factors: First, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citations and punctuation omitted.) *Brown v. State*, 318 Ga. App. 334, 338 (3) (733 SE2d 863) (2012). "Satisfying all four prongs of this standard is difficult, as it should be." (Citation and punctuation omitted.) *Kelly*, 290 Ga. at 33 (2) (a). Mindful of this standard, we turn to the three jury charges given by the trial court that McCullough argues constituted plain error.

9

1. McCullough first contends that the trial court committed plain error by charging the jury on the law of deliberate ignorance. Specifically, the trial court charged the jury:

> Knowledge on the part of the defendant as to the age of the individuals depicted in the sexually explicit material may be actual or may be inferred. A finding beyond a reasonable doubt of conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, a defendant's knowledge of a fact may be inferred from willful blindness as to the existence of the fact. Again, whether or not you draw any such inference is a matter solely within your discretion.

The trial court provided the jury with a copy of the jury charges for their deliberations.

It was error for the trial court to charge the jury on the law of deliberate ignorance. As we have explained, a jury charge on deliberate ignorance or wilful blindness is

> appropriate when the facts support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution. A court should not instruct a jury on deliberate ignorance when the evidence points to actual knowledge or no knowledge on the defendant's part.

10

*Hutchins v. State*, 326 Ga. App. 250, 259 (3) (756 SE2d 347) (2014), quoting *Williamson v. State*, 300 Ga. App. 538, 549 (6) (685 SE2d 784) (2009). Here, there was no evidence that McCullough was aware of a high probability of the existence of child pornography on his laptop and purposefully contrived to avoid learning of this fact to have a defense in the event of criminal prosecution. Rather, the conflicting evidence pointed either to McCullough having actual knowledge of the child pornography on his laptop or no knowledge at all. Accordingly, the trial court erred in charging the jury on deliberate ignorance.

Even if the jury charge on deliberate ignorance was erroneous and the error was obvious, the error does not rise to the level of plain error because McCullough cannot demonstrate that it affected the outcome of the trial court proceedings. "[P]lain-error analysis, which must be distinguished from harmless-error analysis, requires the appellant to make an affirmative showing that the error probably did affect the outcome below." (Citations and punctuation omitted.) *Shaw v. State*, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013). Under the facts of this case, the charge on deliberate ignorance was clearly irrelevant and did not touch on any of the issues raised by the parties. Indeed, the charge on deliberate ignorance was embedded in a charge on the defendant's knowledge of the age of the children depicted in the pornography, and

11

McCullough never disputed that the children in the videos found on his laptop were minors and never asserted that he knew about the pornography but was unaware that the children were minors. In this context, the charge on deliberate ignorance was nothing more than surplusage that was unlikely to mislead or confuse the jury about the real issue in dispute – whether McCullough or his roommate downloaded the child pornography on the laptop.

"Though a part of the charge of the court to the jury may not be pertinent to the issues involved, if it be so clearly irrelevant to such issues that the jury could not have been misled or confused by the giving of such instruction, a new trial will not be granted upon the ground that it was error to give it." (Citation and punctuation omitted.) *Duncan v. State*, 101 Ga. App. 504, 506 (1) (114 SE2d 376) (1960). See *Brown v. State*, 211 Ga. App. 267 (438 SE2d 713) (1993) (no reversible error where charge at issue was mere "surplusage") (citation and punctuation omitted). That is the situation here, and thus we find that the trial court's charge on deliberate ignorance did not constitute plain error.[4]

---

[4] In *Williamson*, 300 Ga. App. at 548-550 (6), we reversed the defendant's conviction and remanded for a new trial because the trial court charged the jury on deliberate ignorance. But *Williamson* is distinguishable from the present case. First, the defendant in *Williamson* objected to the charge, and thus we employed a harmless error rather than the more stringent plain error analysis. Id. Second, the charge on

12

2. McCullough next contends that the trial court committed plain error by giving an erroneous charge on the law of equal access. The trial court charged the jury on the presumption of possession arising from ownership and on the equal access rule:

> If you find that a person owns personal property containing contraband, when I say contraband, that means allegedly obscene videos of minors, containing contraband such as alleged in this case, you will be permitted, but not required, to infer that such person is in possession of all files located on or in that property. However, this is a rebuttable inference and may be overcome by evidence in this case that others had access to the property. Whether or not this inference is drawn from proof that a person is the owner of the property and whether or not the inference has been overcome by proof that others had access to the

---

deliberate ignorance in *Williamson* went further than the charge in the present case and erroneously stated that the *intent* element of the underlying criminal offense (not simply the *knowledge* element) could be satisfied by evidence of deliberate ignorance. Id. at 549 (6). Thus, the charge in *Williamson*, unlike the charge here, contained an erroneous statement of the law that could have misled the jury.

We also concluded that the trial court erred in its charge to the jury on deliberate ignorance in *Able v. State*, 312 Ga. App. 252, 260-261 (3) (b) (718 SE2d 96) (2011), and *Hutchins*, 326 Ga. App. at 258-259 (3). However, in both of those cases, the charge erroneously equated knowledge and intent, like the charge in *Williamson*. See *Able*, 312 Ga. App. at 260-261 (3) (b); *Hutchins*, 326 Ga. App. at 259 (3). Moreover, in both *Able* and *Hutchins*, we did not reach the issue of whether the charge was prejudicial because we had already determined in a prior division of those opinions that a retrial was necessary on other grounds. See *Able*, 312 Ga. App. at 258 (2); *Hutchins*, 326 Ga. App. at 258 (2).

13

premises, and I'm referring to the computer, are questions for the jury alone. I further charge you in that connection that if you find that the property was used by others with the defendant, such evidence would not alone authorize conviction. However, such a fact, if it is a fact, should be considered by you, the jury, together with all the evidence in the case in passing on the guilt or innocence of the defendant.

If you determine from the evidence that persons other than the defendant had equal opportunity to possess or place the articles of child pornography on the computer at issue *without the defendant's knowledge*, then you should acquit the defendant. However, if you are convinced beyond a reasonable doubt that the defendant knowingly possessed the child pornography, or shared possession or control with another person and helped or procured the other person in possessing and having control of the contraband, you would be authorized to convict.

(Emphasis supplied.)

"A charge on equal access is appropriate to counter a jury instruction on presumption of possession[.] Equal access is merely a defense available to the accused to whom a presumption of possession flows." (Citation and punctuation omitted.) *McLean v. State*, 291 Ga. 873, 878 (5) (a) (738 SE2d 267) (2012). Under the law of equal access, the presumption of possession arising from ownership is rebuttable and does not apply where the evidence shows that a person or persons

14

other than the owner had equal access to the property at issue and thus equal opportunity to possess the contraband. *Reyes v. State*, 322 Ga. App. 496, 499 (3) (745 SE2d 738) (2013).

According to McCullough, the trial court's charge on the law of equal access was erroneous because of the italicized language regarding the defendant's knowledge, which the trial court added at the request of the State. McCullough contends that the italicized language could have misled and confused the jury into mistakenly believing that it could not acquit McCullough if he had knowledge that other persons had even the opportunity to place child pornography on his laptop. We are unpersuaded in light of the jury charges read together as a whole.[5]

Jury charges "cannot be viewed in isolation." *Gaston v. State*, 257 Ga. App. 480, 487 (6) (b) (571 SE2d 477) (2002). Rather, in determining whether there was

_____

[5] The State argues that McCullough affirmatively waived the alleged error because his trial counsel stated at the charge conference that the jury charge at issue was "appropriate" and was a "balanced charge." See generally *Hicks v. State*, 295 Ga. 268, 275 (2) (759 SE2d 509) (2014) (affirmative waiver prevents a finding of plain error). However, the record reflects that the trial court did not add the italicized language regarding the defendant's knowledge until *after* defense counsel made the above-referenced comments, and thus the comments were based on a version of the charge that did not include the italicized language in dispute. As such, there was no affirmative waiver.

15

plain error, jury charges "must be read and considered as a whole." *Guajardo v. State*, 290 Ga. 172, 176 (4) (718 SE2d 292) (2011). See also *Emerson v. State*, 315 Ga. App. 105, 112 (2) (726 SE2d 600) (2012).

In addition to the previously quoted charges, the trial court charged the jury that "[k]nowledge that these videos were on the computer hard drive . . . is an essential element of the crime," and that the offense of sexual exploitation of children is committed when the defendant "knowingly possesses" the child pornography at issue. The trial court also charged the jury on actual and constructive possession and explained that "a person who knowingly has direct physical control over a thing at a given time is in actual possession of it," while a person who "knowingly has the power and intention at a given time to exercise authority or control over a thing is in constructive possession of it." The trial court went on to charge the jury on sole and joint possession and further charged the jury that it "would be authorized to convict only if [it] should find beyond a reasonable doubt that the defendant had actual or constructive possession either alone or jointly with others."

When these combined charges are read together, it would have been clear to the jury that to convict McCullough, he had to knowingly possess the child pornography found on his laptop, either alone or jointly with others. The combined

16

charges further make clear that the presumption of possession of the child pornography arising from McCullough's ownership of the laptop could be rebutted by evidence that others had equal access to the laptop. Furthermore, to the extent that the italicized language regarding knowledge could have potentially led to any confusion, that confusion was removed by the subsequent sentence of the charge making clear that to be convicted, McCullough had to have knowingly possessed the child pornography, or have shared possession or control of the child pornography with another person and helped or procured the other person in possessing and having control of that pornography. Accordingly, when the jury charges are read as a whole, we discern no error, much less plain error, arising from the italicized language that McCullough challenges on appeal.

3. Lastly, McCullough contends that the trial court committed plain error in its charge to the jury regarding the use of his audio-recorded statement made to the GBI special agent for impeachment purposes. With regard to McCullough's audio-recorded statement made during the execution of the search warrant at his residence, the trial court charged the jury to first determine whether McCullough was advised of his *Miranda* rights and, if so, whether he knowingly and voluntarily waived those rights before making his statement. The trial court further charged the jury:

> If you find that all of the warnings as to the defendant's constitutional rights were given, that the defendant did clearly understand the meaning of what was said and knowingly gave up such rights, and that the statement was voluntary, then you may consider it as evidence. If so, then you must apply the general rules for testing the believability of witnesses and decide what weight, if any, you will give to all or part of such evidence. . . . If you fail to find any one of the conditions that I've just described, you must disregard the statement entirely and give it no consideration in reaching your verdict, *except for the purposes of impeachment*.

(Emphasis supplied.) McCullough contends that, because he did not testify at trial, the inclusion of the phrase "except for purposes of impeachment" was plain error because it allowed the jury to consider his audio-recorded statement even if the jury found that his statement was obtained in violation of his *Miranda* rights.

McCullough is correct that the inclusion of the phrase "except for purposes of impeachment" was erroneous because he did not testify at trial and thus the charge was not adjusted to the evidence. See *Jackson v. State*, 191 Ga. App. 362, 363 (381 SE2d 759) (1989) ("The instructions of a trial court in a criminal case must be . . . adjusted to the evidence admitted in court."). But even so, it did not rise to the level of plain error because McCullough cannot demonstrate that it affected the outcome of the trial.

In *Byrd v. State*, 325 Ga. App. 24, 29-30 (2) (b) (752 SE2d 84) (2013), we addressed the same charge at issue here and concluded that the trial court erred by including the phrase "except for purposes of impeachment" because the defendant did not testify at trial. But we pointed out that the trial court also charged the jury on the general law of impeachment, namely, that "a witness may be impeached by disproving the facts to which the witness testified or by proof of contradictory statements previously made by the witness about matters relevant to the witness's testimony and to the case." (Punctuation omitted.) Id. at 30 (2) (b). Based on the charge on the general law of impeachment, we reasoned that the jury would have understood that impeachment only applies to witnesses who testify at trial, and given that the defendant did not testify or call any defense witnesses, we concluded that any error from the inclusion of the phrase "except for purposes of impeachment" was harmless. Id. See *Biswas v. State*, 255 Ga. App. 339, 343-344 (3) (565 SE2d 531) (2002) (any error in giving a charge on impeachment was harmless where defendant did not testify at trial and there was no testimony that could have been impeached).

Here, as in *Byrd*, the trial court charged the jury on the general law of impeachment. However, McCullough argues that the present case is distinguishable from *Byrd* because McCullough called several defense witnesses at trial, and the jury

19

could have been confused into believing that it could consider his audio-recorded statement to impeach the testimony of those witnesses, even if it found that the statement was obtained in violation of his *Miranda* rights.

We need not resolve whether the trial court's general charge on impeachment could have led the jury to mistakenly consider McCullough's audio-recorded statement to impeach other defense witnesses. Even if that were true, there still would be no plain error. The trial court's charges on *Miranda* and the voluntariness of a defendant's custodial statements were expressly limited to McCullough's audio-recorded statement made during the execution of the search warrant at his residence and did "not apply to the video statement" made by McCullough at the Douglas County Sheriff's Office. As previously noted, McCullough expressly waived any jury instruction on whether he had asserted or waived his right to counsel during his interrogation at the Douglas County Sheriff's Office or on whether his statements during that interrogation were voluntary. Hence, the jury had before it and was authorized to consider McCullough's video-recorded, incriminating statements made at the Douglas County Sheriff's Office, irrespective of whether it found that his prior audio-recorded statement made during the execution of the search warrant was obtained in violation of *Miranda*. The jury also had before it McCullough's initial

20

incriminating statements made to the Douglas County investigator in the living room during the execution of the search warrant that were not included on the audio recording made by the GBI special agent. Under these circumstances, McCullough cannot demonstrate that any error in the charge relating to his audio-recorded statement had any affect on the outcome at trial, and thus cannot establish plain error. See generally *Cane v. State*, 285 Ga. 19, 20-21 (2) (a) (673 SE2d 218) (2009) (improper admission of statement harmless when cumulative of other statements admitted and considered by the jury).

*Judgment affirmed. Boggs and Branch, JJ., concur.*