**THIRD DIVISION**
**DOYLE, P. J., McFADDEN, P. J.,**
**HODGES, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 1, 2022**

# In the Court of Appeals of Georgia

A20A1051. GRULLON v. THE STATE.

McFADDEN, Presiding Judge.

In *Grullon v. State*, 357 Ga. App. 695 (849 SE2d 291) (2020) (*Grullon I*), we affirmed Victor Grullon's conviction for trafficking in 28 or more grams of a mixture containing heroin. In Division 1, we held that the evidence was sufficient to support the conviction. Id. at 696-700 (1). In Division 2, we concluded that Grullon's claim that a jury charge was improper was not a ground for reversal because he had not preserved that claim for ordinary appellate review and because he had affirmatively waived that claim, meaning that he could not show plain error. Id. at 700 (2).

The Supreme Court of Georgia granted certiorari to review Division 2 of our opinion, and in *Grullon v. State*, 313 Ga. 40 (867 SE2d 95) (2021) (*Grullon II*), the Court "conclude[d] that [we] erred in identifying affirmative waiver under the facts

of this case, . . . reverse[d] th[at] division of [our] decision[,] and remanded the case for reconsideration of other elements of plain error review." Id. at 44 (1) (c) (footnote omitted).

The Supreme Court noted that Grullon had not sought certiorari review of Division 1 of our earlier opinion and so "that part of [our] judgment stands." *Grullon II*, 313 Ga. at 44 (1) (c) n. 4. We vacate Division 2 of our opinion and in place of that Division we adopt the Supreme Court's opinion in *Grullon II* and we now address the other elements of plain error review. Because we conclude that Grullon has not met his burden of demonstrating other elements of plain error review, we again affirm.

1. *Facts.*

The earlier appellate decisions set forth in detail the evidence in this case. See *Grullon II*, 313 Ga. at 41-42 (1) (a); *Grullon I*, 357 Ga. App. at 696-697 (1). Our Supreme Court described the facts as follows:

> [I]n early 2016, the federal Drug Enforcement Administration, together with various local law enforcement agencies, conducted an investigation into Marcelo Enciso-Rodriguez. Law enforcement officers believed Enciso-Rodriguez was acting as a middleman in a heroin trafficking operation that involved a supplier in Mexico, known as "Mariachi," and buyers from New York and Philadelphia. The buyers would drive to the metro Atlanta area and meet Enciso-Rodriguez at a

2

QuikTrip convenience store, where he would give them a car battery in which heroin was concealed. As part of their investigation, officers conducted surveillance on Enciso-Rodriguez through telephone wiretaps, a video camera mounted on a pole in the QuikTrip parking lot, and a stake-out across the street from the QuikTrip.

In January 2016, officers observed a transaction between Enciso-Rodriguez and a man later determined to be Tomas Hernandez, in which Enciso-Rodriguez gave Hernandez a car battery. Before and after the meeting with Hernandez, Enciso-Rodriguez spoke with Mariachi, using coded phrases referring to Hernandez and to the amount of money involved in the transaction.

On February 5, 2016, Mariachi and Enciso-Rodriguez spoke on the phone about another transaction. Apparently referring to a new buyer, Mariachi told Enciso-Rodriguez that "he left today" and would arrive to meet with Enciso-Rodriguez at some point the following day, possibly in the morning.

On the morning of February 6, Enciso-Rodriguez had a series of telephone conversations with a man, later identified as Grullon, who asked for directions to the QuikTrip. Grullon and Hernandez, the buyer from the January transaction, arrived at the QuikTrip in a vehicle with New York plates registered to Grullon. Enciso-Rodriguez gave Hernandez a car battery, which Hernandez placed in the vehicle, and Hernandez and Grullon drove away. Officers followed the vehicle and stopped it shortly thereafter for a tag violation. When officers stopped

the vehicle, Hernandez was driving, and Grullon was seated in the front passenger seat. Hernandez consented to a search of the vehicle. He told the officers that he and Grullon had been in Atlanta for two days visiting a friend and that the battery in the back of the vehicle belonged to him. When the officers began asking questions about the car battery, Grullon appeared as though he might "pass out." The officers cut apart the battery and found six bricks of a substance inside, which were later tested and found to be a mixture containing heroin, weighing 465 grams.

*Grullon II*, 313 Ga. at 41-42 (1) (a).

2. *Jury charge.*

At the state's request, the trial court gave the following jury charge on deliberate ignorance:

> *The element of knowledge, intent, may be satisfied* by inferences drawn from proof that a defendant deliberately closed his eyes to what would otherwise have been obvious to him. A finding beyond a reasonable doubt of conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, a defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact. Again, whether or not you draw such an inference is a matter solely within your discretion.

(Emphasis added.) Grullon asserts two claims of error in respect to this charge, neither of which he preserved for ordinary appellate review. He argues that the trial

4

evidence did not justify the charge, an objection that he raised at the charge conference but did not make again after the trial court charged the jury. He also argues that the charge's reference to "intent" reduced the state's burden as to that element and so misstated the law, an objection that he did not make to the trial court.

Because Grullon did not preserve these claims for ordinary appellate review, we review only for plain error. See *Grullon II*, 313 Ga. at 44-45 (2). See also *Collins v. State*, 308 Ga. 515, 519 (2) (842 SE2d 275) (2020) ("an objection made at the charge conference does not by itself preserve an objection to an instruction as subsequently given"). Plain error review requires the following analysis:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

5

*State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (citation and punctuation omitted; emphasis in original).

In *Grullon I*, we ended our plain error analysis at the first prong, concluding that Grullon had affirmatively waived his objection to the jury charge because, when the trial court asked Grullon's trial counsel if he had any objections after the giving of the charge, his counsel responded "no." *Grullon I*, 357 Ga. App. at 700 (2). Consequently, we did not address any other aspects of the analysis. The Supreme Court held in *Grullon II* that counsel's response did not constitute an affirmative waiver. *Grullon II*, 313 Ga. at 44-48 (2). So we now consider whether Grullon has met his burden of showing the other elements of the plain error analysis.

(a) *Grullon has not shown that it was plain error for the trial court to determine that the evidence supported a charge on the subject of deliberate ignorance.*

Grullon argues that the trial court erred in charging the jury on the subject of deliberate ignorance because the evidence did not support such a charge. Neither *Grullon I* nor *Grullon II* addressed or considered the merits of this claim. It was not necessary for us to do so in *Grullon I* given our holding that Grullon had affirmatively waived plain error review of the charge, and on certiorari the Supreme

6

Court focused its review on our affirmative waiver holding. While the state concedes that the particular charge given in this case contained a misstatement of the law, the state disputes Grullon's assertion that the evidence did not justify a charge on the subject of deliberate ignorance. So we begin our plain error analysis by considering whether, in light of the trial evidence, the trial court obviously erred in concluding that the evidence supported a charge on deliberate ignorance. See generally *Shadix v. Carroll County*, 274 Ga. 560, 563-564 (1) (554 SE2d 465) (2001) (on remittitur of an appeal from the Supreme Court, we must enter an appropriate disposition on issues that were neither addressed nor considered by the Supreme Court).

Grullon has not shown that the trial court obviously erred in this respect. "A deliberate ignorance instruction is appropriate when the facts support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning of all of the facts in order to have a defense in the event of a subsequent prosecution." *Huckabee v. State*, 287 Ga. 728, 734 (6) (b) n. 7 (699 SE2d 531) (2010) (citations and punctuation omitted). "Slight evidence is sufficient to authorize a charge on a subject. The evidence necessary to justify a jury charge need only be enough to enable the trier of fact to carry on a

legitimate process of reasoning." *Koritta v. State*, 263 Ga. 703, 704-705 (438 SE2d 68) (1994) (citations omitted).

In our earlier opinion, we identified circumstantial evidence that we held to be sufficient to show that Grullon had knowledge of the heroin:

> There is evidence that on February 6, 2016, Grullon participated in a series of calls with Encino-Rodriguez concerning the place and time of their meeting to get the battery. . . . There is also evidence that Grullon was present when Hernandez placed the battery in the car. When he was asked about the battery at the traffic stop, he appeared visibly disturbed.

*Grullon I*, 357 Ga. App. at 698-699 (1). That circumstantial evidence was at least slight evidence for the proposition that, even if Grullon did not actually know what was in the battery, he was aware of a high probability that the battery contained a trafficking level of heroin. See *Hutchins v. State*, 326 Ga. App. 250, 255 (1), 259 (3) (756 SE2d 347) (2014) (finding that the record contained some evidence which would support a deliberate ignorance charge where there was circumstantial evidence that the defendant was aware another person was manufacturing methamphetamine, yet permitted her child to live in that person's home while the activity was occurring, but the defendant claimed to be unaware of the activity); *Able v. State*, 312 Ga. App. 252, 254 (1), 259 (3) (a) (718 SE2d 96) (2011) (holding that circumstantial evidence,

8

sufficient to show the defendant knew that the passenger in a car he was driving was carrying drugs in an insulated bag, also supported the giving of a jury instruction on deliberate ignorance).

Contrary to Grullon's argument, this was not a case in which the evidence pointed only to his actual knowledge of the heroin or to no knowledge at all. See *Camacho v. State*, 342 Ga. App. 637, 641 (1) (b) (804 SE2d 660) (2017) ("A trial court should not instruct a jury regarding deliberate ignorance when the evidence *only* points to either actual knowledge or no knowledge on the part of the defendant.") (citation and punctuation omitted; emphasis in original). In fact, Grullon concedes in his appellate brief that a reasonable juror could conclude from the evidence that he "had strong suspicions that something illicit was inside the battery." Given the evidence, we discern no obvious error in the trial court's decision to give a charge on the subject of deliberate ignorance.

(b) *Grullon has not shown that the misstatement of law within the deliberate ignorance jury charge was plain error.*

Turning to the charge that was given, we conclude that Grullon has not satisfied the plain error standard. As detailed above, the first prong is satisfied: there was no waiver. We now hold that the second, clearly erroneous prong is satisfied as

9

well. But we hold that the third is not: Grullon has not shown that his substantive rights were affected; he has not shown that the error probably affected the outcome below. So our analysis ends there, and we once again affirm.

The trial court did obviously err by including the word "intent" in the charge on deliberate ignorance. That charge, set out in full above, began by stating: "The element of knowledge, *intent*, may be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what would otherwise have been obvious to him." (Emphasis supplied.) "[A] charge on deliberate ignorance that equates intent with knowledge, or which tends to confuse those concepts, is erroneous." *Matos-Bautista v. State*, 353 Ga. App. 773, 778 (1) (839 SE2d 260) (2020). Accord *Hutchins*, 326 Ga. App. at 259 (3); *Able*, 312 Ga. App. at 260-261 (3) (b). Indeed, as the Supreme Court noted in *Grullon II*, "[t]he parties do not dispute that the trial court's jury instruction on deliberate ignorance was clearly erroneous." *Grullon II,* 313 Ga. at 46 (2).

Nevertheless, Grullon has not shown plain error. The third prong of the plain error analysis imposes upon Grullon "the burden of making an affirmative showing that the error probably did affect the outcome below." *Bozzie v. State*, 302 Ga. 704, 708 (2) (a) (808 SE2d 671) (2017) (citation and punctuation omitted). While this

10

showing is similar to that for harmless error, the burden of making the showing is different — it falls on Grullon rather than on the state. See id. Grullon does not acknowledge this distinction in his appellate briefing; instead he argues that we should presume harm from the erroneous jury charge and reverse his conviction because the state did not demonstrate that the charge was harmless. Grullon's arguments would be appropriate if we were applying ordinary appellate review to this claim of error. But his arguments do not meaningfully address the affirmative showing he is required to make under plain error review. See *State v. Williams*, 308 Ga. 228, 232 (2) n. 8 (838 SE2d 764) (2020) (a case in which harmful error is found "is not directly binding" on a case decided under plain error review given the different burdens imposed by the two types of review); *Mitchell v. State*, 304 Ga. 56, 60 (2) (b) n. 3 (816 SE2d 9) (2018) (declining to apply a presumption of harmful error to a plain error review of statements that the trial court made to prospective jurors during voir dire, noting that authority cited by the defendant for that presumption "did not involve plain error or the failure of an appellant to interpose a timely objection, and is thus inapplicable to our analysis of the four-prong test of *Kelly*[, 290 Ga. at 33 (2) (a),]" and that, under plain error review, the defendant "bears the difficult burden

11

of satisfying that test, and *he* must demonstrate that it affected the outcome of the trial court proceedings") (citation and punctuation omitted; emphasis in original).

Moreover, even under ordinary appellate review we have held that a similar misstatement in a deliberate-ignorance charge was harmless and did not require reversal. In *Matos-Bautista v. State*, which also involved a heroin-trafficking conviction, the trial court gave a deliberate ignorance jury charge that began: "I charge you that the elements of *knowledge or intent* may be satisfied by inferences drawn from proof that the defendant deliberately closed his eyes to what . . . would otherwise have been obvious to him." *Matos-Bautista*, 353 Ga. App. at 776 (1) (punctuation and emphasis in original). Like Grullon, the defendant in *Matos-Bautista* argued that this charge "erroneously instructed the jury that the element of intent could be satisfied by inference drawn from proof that he deliberately closed his eyes to what would have been obvious to him, when the deliberate ignorance instruction applies only to the *knowledge* element of a criminal offense." Id. (emphasis in original). Even under ordinary appellate review we concluded that the charging error was harmless because, "[i]n the context of the entire charge, there [was] no reasonable likelihood that the jury misapplied the challenged instruction." Id. at 778-779 (1).

12

We based this conclusion on the language of the deliberate ignorance instruction as well as the charge as a whole. *Matos-Bautista*, 353 Ga. App. at 778-779 (1). Importantly, the charge here contains similar language and instructions to those we found dispositive in *Matos-Bautista*. After beginning with erroneous language about "intent," the deliberate ignorance instruction in this case (as in *Matos-Bautista*) later omitted any reference to "intent" when it restated the rule: "Stated another way, a defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact." See id. at 778 (1). And as in *Matos-Bautista*, the trial court in this case

> pertinently instructed the jury as follows: the [s]tate has the burden of proving each element of the crime beyond a reasonable doubt; facts that merely place upon the defendant a grave suspicion or raise speculation or conjecture of guilt are not sufficient to authorize conviction; circumstantial evidence is proof of facts by direct evidence [that tends to prove or disprove] other related facts; a conviction may be based on circumstantial evidence; and the jury must determine the credibility of witnesses. The court also instructed the jury: the [s]tate must prove intent beyond a reasonable doubt; intent may be shown in many ways, including inferred from the proven circumstances or inferred when it is the natural and necessary consequence of an act; and the defendant is not presumed to have acted with criminal intent, though the jury may find such intention (or its absence) upon a consideration of words,

13

conduct, and other circumstances connected with the charged act. In addition, the court instructed the jury that the [s]tate has the burden of proving knowledge beyond a reasonable doubt, defined knowledge and stated how it may be shown, and gave the deliberate ignorance instruction immediately thereafter.

Id. at 778 (2).

We find our reasoning in *Matos-Bautista* persuasive here, all the more as it was decided using a harmless error analysis rather than a plain error analysis. The principle that "[j]ury charges cannot be read in isolation [but] must be read and considered as a whole" also applies to plain error review. *McCullough v. State*, 330 Ga. App. 716, 724 (2) (769 SE2d 138) (2015) (citations and punctuation omitted). And the plain error analysis is more stringent than the harmless error analysis. See id. at 722 (1) n. 4. We find no merit in Grullon's argument that the error in this case was meaningfully different from that in *Matos-Bautista* because the trial court in this case did not include the word "or" between the words "knowledge" and "intent."

Given that both the specific deliberate ignorance instruction and the salient portions of the charge as a whole are nearly identical in this case to those in *Matos-Bautista*, we conclude that Grullon has not met his burden of showing that the error

14

affected the outcome of the trial court proceedings. Consequently, he has not shown plain error.

*Judgment affirmed. Doyle, P. J., and Hodges, J., concur*.